.
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN HOGSTON,

            Plaintiff,                    Case No. 2:14-cv-14458
                                          District Judge Avern Cohn
v.                                        Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

            Defendant.
_____/

## RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 23) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 16)

I.     **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Defendant's motion for summary

judgment (DE 23), **DENY** Plaintiff's motion for summary judgment (DE 16), and

**AFFIRM** the Commissioner's decision.

II.    **REPORT**

        Plaintiff, John Hogston, brings this action under 42 U.S.C. §§ 405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his applications for social security disability insurance

benefits and supplemental security income.  This matter is before the United States

Magistrate Judge for a Report and Recommendation on Plaintiff's motion for

summary judgment (DE 16), the Commissioner's memorandum in opposition and cross motion for summary judgment (DE 23), Plaintiff's reply (DE 31), and the administrative record (DE 14).

### A.   Background

Plaintiff protectively filed his application for benefits on August 21, 2009, alleging that he has been disabled since January 1, 2008, with a date last insured ("DLI") of September 30, 2012.  (R. 30 and 123.)  Plaintiff alleged disability as a result of musculoskeletal impairments, mental impairments, genitourinary impairments, and digestive impairments.  (R. at 160-61.)  Plaintiff's applications were denied.  Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  ALJ Jerome Blum held a hearing on October 26, 2010 and subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 30-66.)   On December 27, 2011, the Appeals Council denied Plaintiff's request for review.  (R. at 7-9.)  Plaintiff then timely commenced his first appeal in this Court.  On September 26, 2013, Magistrate Judge Randon remanded the case to the ALJ for further proceedings with instructions to re-weigh the opinion of LLP Pearson according to 20 C.F.R. § 404.1527(d), to reformulate the RFC based on his new conclusions regarding the proper weight to be afforded to LLP Pearson's opinion, and to explain how Dr. Pinson's findings are incorporated into the evaluation of LLP Pearson's opinion.

ALJ Blum held a second hearing on June 18, 2014.  (R. at 356-420.)  He again determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 340-350.)  ALJ Blum's second decision became the Commissioner's final decision and Plaintiff then timely commenced the instant action.

### B.    Plaintiff's Medical History

Plaintiff began treating with Dr. Thomas Pinson, D.O., on February 7, 2008.  (R. at 237.)  He presented with complaints of lower back pain and enuresis.  (R. at 236-37.)  He returned in April 2008, May 2008, March 2009, June 2009, July 2009, and September 2009 with similar complaints.  Plaintiff underwent an MRI of the lumbar spine on May 17, 2009, which revealed no loss of lumbar vertebral body height and/or malalignment.  (R. at 221.)  It revealed minimal disc bulge at the LI-L2 and mild posterior disc bulge with a tear at L3-L4.  (Id.)  The findings were multilevel degenerative changes of the lumbar spine.  (R. at 222.)

Dr. Pinson completed a Residual Functional Capacity Questionnaire on August 25, 2010 and indicated that Plaintiff was required to urinate 10-12 times per day, a condition that was worsened by stress.  (R. at 287.)  He indicated that Plaintiff was incapable of even low stress jobs and would need to take frequent breaks.  (R. at 288-89.)

3

Plaintiff underwent a medical evaluation with Asit K. Ray, M.D., on December 3, 2009.  (R. at 240-243.)  Dr. Ray described Plaintiff as independent in dressing and undressing, and noted that he could drive.  In addition, Dr. Ray reported that Plaintiff was working part time doing home improvement.  (R. at 240.)  He described Plaintiff as a "healthy looking adult male" with upright posture and symmetrical shoulders and pelvis.  (R. at 241.)  Plaintiff ambulated normally without a limp, was able to squat fully, and the range of motion in his cervical spine was normal.  (R. at 241.)  Dr. Ray found "no evidence of lumbo sacral spine radiculopathy" and concluded that Plaintiff should be able to perform his occupational duties without restriction.  (R. at 242.)

Plaintiff was evaluated by John R. Lanesky, D.O., on November 11, 2008. (R. at 322.)  Dr. Lanesky diagnosed Plaintiff with enuresis and questionable interstitial cystitis.  (R. at 322.)  Plaintiff underwent a renal and prostate ultrasound on September 15, 2008, which revealed normal kidneys and no evidence of a prostate enlargement or mass.  (R. at 330.)

Thomas Pearson, M.S., L.L.P. ("LLP Pearson") began treating Plaintiff in February 2010 and saw him four times per month.  (R. at 296.)  During his treatment, Plaintiff expressed feelings of depression due to his living situation.  (R. at 281.)  In addition, LLP Pearson discussed "getting out of the home more often and doing some community involvement."  (Id.)  He noted that Plaintiff's

appearance was "neat and clean" and that his speech was clear and coherent. (R. at 275.) LLP Pearson diagnosed major depression, severe and recurrent. (R. at 278.)

On August 27, 2010, LLP Pearson completed a Psychiatric Evaluation Form for Affective Disorders relating to Listing 12.04. (R. at 295-301.) LLP Pearson indicated that Plaintiff had marked difficulties in social functioning and maintaining concentration, persistence, and pace. (R. at 296.)

On February 7, 2014, Plaintiff underwent a consultative examination by H. Gummadi, M.D. (R. at 575-577.) Dr. Gummadi described Plaintiff as in contact with reality with low self-esteem. She described his mental activity as "spontaneous, logical and goal-directed." (R. at 576.) He was able to complete simple memory tests and engage in abstract thinking and exercised judgment. (Id.) Dr. Gummadi concluded that Plaintiff was "able to understand, retain and follow instructions," but noted he should be restricted to brief and superficial interactions with coworkers, supervisors, and the public because of his depression and physical limitations. (R. at 577.)

### C.   October 26, 2010 Hearing Testimony

#### 1.   Plaintiff's Testimony

At the time of his first hearing, Plaintiff was a 46 year-old man with a tenth-grade education. (R. at 47-48.) He testified that he had done home improvement work since 1993, but had to quit because of problems with his back, which made

him unable to stand or sit for long periods of time.  (R. at 49.)  Plaintiff testified that he needed to change sitting positions every twenty to thirty minutes due to the pain, could lift ten pounds or less, and could walk about two blocks without stopping.  (R. at 49-50.)  On a scale of 1-10, Plaintiff indicated that his pain was usually a 5, but increased to 10 during an "episode," which occurred once or twice a month.  (R. at 54.)  In addition, Plaintiff testified that the pain made it difficult for him to concentrate.  (R. at 54.)  He noted that he took Valium and Vicodin for his pain, which caused drowsiness lasting two to four hours and required him to lie down.  (R. at 49-51.)  According to Plaintiff, he would be unable to do an eight-hour per day, forty-hour per week job because of his back pain as well as "the distraction from the depression."  (R. at 58-59.)

In addition, Plaintiff testified that he suffered from enuresis incontinence and depression.  (R. at 49.)  Plaintiff explained that his enuresis caused him to "constantly be aware of the bathroom," because of sudden urges to urinate that occurred at least ten times per day.  (R. at 51-52.)  Plaintiff noted that he suffered from depression for most of his life, but testified that it had worsened over the years.  (R. at 52.)  According to Plaintiff, he also suffered from numbness in his hands and legs that caused him to "drop things a lot."  (R. at 49.)

Plaintiff testified that he had been working two days per week from 2002-2009, doing small home improvement projects including painting and finished

carpentry.  (R. at 55-56.)  He testified that he was able to drive a car and lived with his mother and sister.  (R. at 57.)

### 2.    Vocational Expert Testimony

James Fuller testified as the Vocational Expert ("VE") at the October 26, 2010 administrative hearing.  (R. at 60-66.)  The VE classified Plaintiff's past relevant work as "construction worker," which he characterized as semiskilled with a heavy physical demand.   (R. at 60.)   The VE testified that Plaintiff's past relevant work would be precluded for an individual who could not stand for more than eight hours per day and could not lift more than ten pounds.  (R. at 62.)   The VE testified that an individual with those limitations would be able to perform unskilled sedentary work, such as assembly, packaging and sorting positions.  In total, the VE testified that there would be 20,000 jobs with a sit-stand option in the regional area, and 40,000 in the state.  (R. at 62.)  The VE testified that the individual would be required to remain on task "throughout the majority of the day," and that the need to lie down a number of times per day would be work preclusive.  (R. at 63.)

Upon questioning from Plaintiff's counsel, the VE testified that more than one absence per month and less than 90% on task per day would be work preclusive.  (R. at 34.)  He further noted that an inability to sustain an ordinary

routine without special supervision would preclude competitive employment.  (R. at 65.)

### D.      June 18, 2014 Hearing Testimony

#### 1.      Plaintiff's Testimony

At his second hearing, Plaintiff testified that he was 49 years old and would turn 50 in August.  (R. at 366.)[1]  He maintained that he stopped his work in home improvement in 2009 because of pain in his back and legs.  (R. at 366-67.)  According to Plaintiff, he tried to undergo physical therapy for the pain, which was unsuccessful.  Plaintiff testified that he treats the pain with medications.  (R. at 367.)  He indicated that, on a scale from 1-10, the pain in his legs was 10/10 on a daily basis.  (R. at 369.)  He also noted that his physician suspected multiple sclerosis and was sending him for an MRI.  (R. at 369-70.)  Plaintiff averred that he could walk for a half a block, stand for 20-30 minutes, and sit for 30 minutes.  (R. at 370.)

Plaintiff further addressed his enuresis.  (R. at 374.)  He testified that he urinated 10-12 times per day.  Plaintiff indicated that it was hard for him to control

---

[1] This is relevant because, pursuant to the Medical Vocational Guidelines ("the grids"), an individual aged 50-54 is considered "closely approaching advanced age," and a finding of disabled is normally appropriate where "such individuals . . . can no longer perform vocationally relevant past work and have no transferable skills."  Appendix 2 to Subpart P of Part 404.  However, in order for this finding to occur, Plaintiff must demonstrate that he was disabled on or before his date last insured.

his bladder and had to "get to a bathroom within about two minutes." (R. at 375.)
Plaintiff testified that he was treating this condition with medication, which helped
"somewhat." (Id.)

Plaintiff also testified to depression, for which he took Valium and saw a
counselor. (R. at 374.) He noted that the depression made it difficult for him to
concentrate, multitask, or get "motivated to do anything." (R. at 380.)

Plaintiff indicated that he would be unable to perform an eight-hour per day,
five-day per week seated job that involved lifting no more than ten pounds.

## 2.    Vocational Expert Testimony

Helen Topcik testified as the Vocational Expert ("VE") at the June 18, 2014
administrative hearing. (R. at 381-394.) VE Topcik discussed VE Fuller's
previous testimony that Plaintiff was capable of the sedentary, unskilled job of
assembler/packer. (R. at 382.) The ALJ asked VE Topcik to identify sedentary,
unskilled jobs that exist in the local and national economy. The VE identified
three such positions: table worker, with 1,000 jobs regionally, 2,000 in the State of
Michigan, and 200,000 nationally; sorter, with 1,200 jobs regionally, 2,500 in the
State of Michigan, and 300,000 nationally; and final assembler, with 1,000 jobs
regionally, 2,500 in the State of Michigan, and 150,000 nationally. The ALJ then
reiterated Plaintiff's stated limitations, including severe pain in the legs and back,
limitations on sitting, standing, and walking, and a urinary problem resulting in

9

lack of control of urination 10 to 12 times per day and the VE testified that such limitations would be work preclusive if taken as true.  (R. at 385-87.)

Upon questioning from Plaintiff's counsel, the VE testified that sedentary jobs typically require lifting up to five pounds frequently and standing and walking for up to two hours per day.  (R. at 388.)   She testified that the jobs listed above are simple and unskilled with a specific vocational preparation of 2.[2]  (Id.)  The VE testified that the need to lie down two to three hours per day would be work preclusive.  (R. at 389.)  Finally, the VE testified that a restriction to brief and superficial interactions with coworkers, supervisors, and the public would not be work preclusive.  (R. at 389-90.)  The VE indicated that she based her jobs numbers off of information from the U.S. Department of Labor, Job Browser Pro., and her 30 years of experience.  (R. at 392-93.)

## E.  THE ADMINISTRATIVE DECISION

On August 8, 2014, the ALJ issued his decision in the instant action.  (R. at 340-350.)  At step one of the sequential evaluation process,[2] the ALJ found that

---

[2] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  SSR 00-4P.

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin*

Plaintiff had not engaged in substantially gainful activity since January 1, 2008 through his date last insured of September 30, 2012.  (R. at 342.)

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease (lumbar spine) with foraminal stenosis and L4-5 radiculopathy; and depression.  (Id.)  He found that Plaintiff's impairment of neurogenic bladder was non-severe.  (R. at 342-43.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 343.) Specifically, he considered Listings 1.04, and 12.04.

---

*v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[3] and determined that Plaintiff had the capacity to perform unskilled sedentary work.  (R. at 344.)  Relying on the VE's testimony, the ALJ determined that Plaintiff was unable to perform his past relevant work.  (R. at 349.)

At step five, the ALJ concluded that Plaintiff was capable of performing other jobs that exist in significant numbers in the national economy.  (R. at 349.)  In doing so, the ALJ re-weighed the opinions of LLP Pearson and Dr. Pinson, noting that the case had been remanded for such a re-evaluation.  (R. at 346-348.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.

## F.  STANDARD OF REVIEW

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

---

[3] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §404.1545(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this

13

Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### G. ANALYSIS

In his motion for summary judgment, Plaintiff asserts numerous statements of error. First, he argues that the ALJ failed to follow Judge Randon's remand order. *See Hogston v. Comm'r of Soc. Sec.*, No. 12-cv-12626, 2013 WL 5323781 (E.D. Mich. Sept. 26, 2013). Second, he contends that the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician. Third, he asserts that the ALJ committed reversible error by failing to obtain a medical opinion on the issue of whether his impairments medically equals one of the listed impairments. Fourth, he posits that the ALJ relied on a flawed hypothetical to the VE. Fifth, Plaintiff asserts that the ALJ committed reversible error by failing to evaluate all of the

medical exhibits in the record. Sixth, Plaintiff points out that the ALJ did not comply with his request for subpoenas. Lastly, Plaintiff attempts to "re-raise[]" all of the issues from his initial briefing. Specifically, he re-asserts that the ALJ: 1) improperly applied the grids in spite of significant nonexertional impairments; 2) failed to assess limitations related to his enuresis; and 3) committed reversible error by failing to do a function by function analysis.

The Commissioner opposes Plaintiff's motion, asserting that she is entitled to a grant of summary judgment because substantial evidence supports the ALJ's conclusions. I agree with the Commissioner and will address each point below.

### 1.   Compliance with Judge Randon's Order

#### a.   LLP Pearson

In his 2013 Opinion and Order, Magistrate Judge Randon remanded the matter back to the ALJ with instructions to provide a clear explanation of the weight he afforded to LLP Pearson's opinion and reformulate Plaintiff's RFC based on the new conclusions. Plaintiff asserts that the ALJ failed to do so here by merely "doubl[ing] down" on his prior reasons for discounting the opinion. Defendant counters that the ALJ properly evaluated the opinion evidence and that his decision is supported by substantial evidence.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(d). The regulations define

medical opinions as "statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 CFR § 404.1527(e)(2)(i). The ALJ must, however, "consider findings and other opinions" of State Agency medical or psychological consultants. Id.

The ALJ generally gives deference to the opinions of a treating source "since these are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(d)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). To qualify as a treating source, the physician must have an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502.

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature

and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Wilson*, 378 F.3d at 544 (discussing 20 C.F.R. § 404.1527). Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *7 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir.1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.

Pursuant to the Social Security Regulations, therapists like LLP Pearson are considered "other sources" upon which the ALJ *may* rely to show the severity of

17

the claimant's impairments and how they affect his or her ability to work, but for whom it is not mandatory to apply the § 404 1527(d) factors. *See* 20 C.F.R. § 404.1513(d). Social Security Ruling 06-03p, however, clarifies that the factors applied to acceptable medical sources can also be applied to opinion evidence from other sources. Judge Randon relied on this ruling and instructed the ALJ to analyze LLP Pearson's opinion consistent with the factors in 20 C.F.R. § 404.1527(d).

LLP Pearson completed a psychiatric evaluation form for affective disorders on August 27, 2010. (R. at 294-301.) He indicated that Plaintiff reported "great difficulty in concentration and sustaining attention," and assessed that he was moderately limited in the area of concentration, persistence, and pace (among others). (R. at 296-99.) LLP Pearson also completed a Mental Residual Functional Capacity Assessment ("MRFC Assessment") in which he checked boxes indicating that Plaintiff was markedly limited in his ability: to carry out detailed instructions;, to sustain an ordinary routine; to complete a normal workday or workweek without interruptions from psychologically based symptoms; to get along with coworkers; to maintain socially appropriate behavior; and, to set realistic goals or make plans independently of others. (R. at 302-305.) In the narrative section of the MRFC Assessment form, LLP Pearson noted that Plaintiff presented with a depressed mood and severe mood swings. In addition, LLP

18

Pearson indicates that Plaintiff "reports concerns with" his activities of daily living and reports decompensation due to social and medical concerns." (R. at 304.)

The ALJ again assigned little weight to the opinion of LLP Pearson, concluding that his opinions were not well supported or consistent with other substantial evidence in the record. (R. at 346.) He then went on to apply the § 404.1527(d) factors. First, he noted that Plaintiff's treating relationship with LLP Pearson was "extremely brief." (R. at 347.) Second, he indicated that LLP Pearson only saw Plaintiff for a short period and did not administer a comprehensive mental status examination, which could have presented objective evidence of Plaintiff's mental impairments. Finally, the ALJ concluded that LLP Pearson's opinion was not consistent with the record as a whole.

I conclude that the ALJ complied with Judge Randon's Order by applying the 20 C.F.R. § 404.1527(d) factors to the opinion of LLP Pearson. Plaintiff argues that the ALJ put too much emphasis on the fact that Plaintiff saw LLP Pearson based on an attorney referral, but does not address the ALJ's conclusion that the length of treatment was extremely brief (four times from February 2010 to August 27, 2010, according to Plaintiff). (DE 16 at 17.)

Plaintiff also takes issue with the ALJ's conclusion that LLP Pearson's findings are inconsistent with the record as a whole, and specifically with Dr. Chapman's assessment. Dr. Chapman's assessment indicated that Plaintiff was

19

well groomed, fully oriented, maintained good eye contact, had a logical thought
process, and average intelligence, which does seem to contradict LLP Pearson's
assessment of marked limitations.  (R. at 284.)  Moreover, LLP Pearson's
assessment contradicts that of treating physician Dr. Pinson, who notes that
Plaintiff showed stable judgment, full orientation, normal memory, and relaxed
mood.  (R. at 593, 599, 605, 609, and 611.)  Dr. Pinson's notes further indicate that
Plaintiff's anxiety had been controlled with Valium.  (R. at 608.)  Substantial
evidence, therefore, supports the ALJ's decision to afford little weight to LLP
Pearson's opinions.

### b.      Treating Physician Dr. Pinson

Dr. Pinson opined that Plaintiff was incapable of even low stress jobs
because of bipolar and anxiety medication that can affect his concentration and
make him drowsy.  (R. at 288.)  In addition, he noted that Plaintiff could walk less
than one block, sit and stand less than ten minutes, and could sit and stand about
two hours in an eight-hour workday.  (R. at 288-89.)  Plaintiff asserts that the ALJ
failed to properly evaluate the opinion of treating physician Dr. Pinson by failing
to give good reasons for assigning his opinion only limited/moderate weight.
According to Plaintiff, it was improper to discount the weight of Dr. Pinson's
opinion on the basis that his treatment of Plaintiff was conservative and that his
notes indicated that Plaintiff had a normal gait, station, and neurological

functioning. He further argues that conservative treatment is not, on its own, a factor in rejecting the opinion of a treating physician, and points to other evidence in the record to indicate that Plaintiff had abnormal musculoskeletal examinations.

Here, as well, the ALJ applied the appropriate factors in discounting the opinion of Dr. Pinson. First, he noted that Dr. Pinson had "a substantial treating history" with Plaintiff, but that his opinion was not supported by substantial evidence in the record. Second, he concluded that Dr. Pinson's treatment notes were inconsistent with his opinion that Plaintiff was disabled. The record supports this conclusion, as Dr. Pinson's notes include normal mental examinations and memory tests. (R. at 287, 292, 593, 599, 605, 609, 611.)

As to Plaintiff's back and leg issues, Dr. Pinson's notes do not indicate limitations as to standing, walking, and lifting. Finally, although Plaintiff is correct that conservative treatment alone is an insufficient basis on which to discount an opinion, it is appropriate to point to conservative treatment as *one of the bases*, as was done here. *See Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that the ALJ "reasonably discounted [the treating physician's] medical opinion on the basis that it conflicted with other substantial evidence in the record," including his own treatment notes which "generally showed that [the claimant] was receiving conservative treatment . . . .").

In addition to the ALJ's notation about evidence of Dr. Pinson's conservative treatment of Plaintiff, he also notes that "[m]ore importantly, a review of a comprehensive physical exam dated just eight-months prior to Dr. Pinson's opinion reveals entirely unremarkable results."  (R. at 347.)  Indeed, his December 3, 2009 examination revealed no evidence of muscle atrophy in Plaintiff's back, normal walk, no neurological defects, and a grip strength of 65 pounds on the right and 68 pounds on the left.  (R. at 239-248.)  The ALJ also discusses Plaintiff's self-reported activities of daily living, which reveal that he does chores including cleaning, cooking, mowing the lawn, and shopping for food once per week.  (R. at 136-138.)  Finally, the ALJ points out that as of April 2014, Plaintiff had a normal gait and station and normal neurological functioning.  (R. at 592-93.)  Accordingly, the ALJ complied with Judge Randon's Order, and substantial evidence supports his decision to discount the opinion of Dr. Pinson.

## 2.    Listings 1.04 and 12.04

Plaintiff asserts that the record does not contain a medical basis for the ALJ's conclusion that Plaintiff's conditions do not medically equal any of the listed impairments.  (DE 16 at 22.)  He relies on *Pizzo v. Comm'r of Soc. Sec.*, No. 13-cv-11344, DE 17 at 43 (E.D. Mich. Feb. 20, 2014), for the proposition that "the lack of any medical opinion on the issue of equivalence is still an error requiring remand."  Defendant counters that such a proposition has been rejected by this

Court in earlier cases such as *Gallagher v. Comm'r of Soc. Sec.*, No. 10-cv-12498, 2011 WL 3841632, at 9 (E.D. Mich. Mar. 29, 2011) and *Timm v. Comm'r of Soc. Sec.*, No. 10-10594, 2011 WL 846059, at *4 (E.D. Mich. Feb. 14, 2011). Nevertheless, "[t]he great weight of authority holds that a record lacking any medical advisor opinion on equivalency requires a remand." *Covey v. Comm'r of Soc. Sec.*, No. 12-10326, 2013 WL 462066, at *12 (E.D. Mich. Jan. 16, 2013) *report and recommendation adopted* No. 12-10326, 2013 WL 461535 (E.D. Mich. Feb. 7, 2013).

To establish equivalency, Plaintiff must "present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "SSR 96-6p and the regulations imply that an appointed expert must provide the equivalence opinion." *Moran v. Comm'r of Soc. Sec.*, No. 13-cv-13452, 2014 WL 4197366, at *25 (E.D. Mich. Aug. 22, 2014). The reason for this requirement is to ensure that lay ALJs (and federal court judges) refrain from making "complex medical determinations." *Id.* at *26 (E.D. Mich. Aug. 22, 2014); *see also Manson v. Comm'r of Soc. Sec.*, No. 12-11473, 2013 WL 2456960, at *12 (E.D. Mich. July 9, 2013) (remanding because "neither the ALJ nor [the] court possesses the requisite medical expertise to determine if [Plaintiff's] impairments . . . in combination equal one of the Commissioner's listings.") (internal quotations omitted).

23

In light of this requirement, the Eastern District of Michigan has consistently held that "'longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence of the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight.'" *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 52372883, at *12 (E.D. Mich. Sept. 25, 2013) (quoting SSR 96-60, 1996 WL 374180, at *3); *see also Yahya v. Comm'r of Soc. Sec.*, No. Civ. A. 13-12054, 2014 WL 1776006, at *12 (E.D. Mich May 5, 2014) (remanding for "overall lack of medical expert opinion evidence.");; *Klink v. Comm'r of Soc. Sec.*, No. 12-15172, 2014 WL 902707, at *10 (E.D. Mich. Mar. 7, 2014) (remanding where a lay review of the record "suggests it is at least plausible that Plaintiff's impairments could medically equal" a Listing.).

Accordingly, a remand would be appropriate where a lay review of the record suggests it is plausible that Plaintiff's impairments could medically equal Listings 1.04 or 12.04. Plaintiff bears the burden of proving that his impairments meet or medically equal a particular listing. *See Buress v. Sec'y of Health & Hum. Serv's*, 835 F.2d 139, 140 (6th Cir. 1987). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work

experience." 20 C.F.R. § 404.1525(a). "A claimant must satisfy all of the criteria to meet the listing." *Rabbers*, 582 F.3d at 653. Moreover, all of the criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. §404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation").

Plaintiff does not set forth a plausibility argument or present medical findings equal in severity to all the criteria for Listings 1.04 and 12.04. Instead, he merely asserts that the lack of an expert opinion is sufficient for remand. Defendant counters that Plaintiff's impairments are not severe enough to require an equivalency analysis. The Undersigned agrees.

To meet Listing 1.04, Plaintiff must demonstrate the following:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful

> dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04. Here, the ALJ concludes that Plaintiff does not meet the Listing because he simply does not have one of the listed impairments. Plaintiff does not offer any evidence to dispute this, or to create a plausible inference that his symptoms medically equal the Listing.

Similarly, as to Listing 12.04, Plaintiff must demonstrate a mood disturbance, accompanied by full or partial manic or depressive symptom resulting in a *marked* restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04. Here, the ALJ concluded that Plaintiff's mental impairments did not meet or medically equal the Listing because it causes no more than moderate difficulties. Plaintiff adduces no evidence to dispute this. A lay review of the record does not suggest that it is plausible that his impairments equal either one of the Listings and he has not presented medical findings "equal in severity" to all of their criteria. Accordingly, Plaintiff's equivalency argument is without merit.

### 3. Hypothetical Question to the VE

Plaintiff asserts that the ALJ's hypothetical to the VE was improper because it did not identify a moderate limitation in concentration, persistence, and pace and did not account for a finding of severe depression. According to Plaintiff, the ALJ's finding of severe depression, on its own, is work preclusive.

As to Plaintiff's first argument, the ALJ accounted for Plaintiff's moderate limitations in CPP by limiting him to simple, routine, and repetitive tasks. Such a limitation can appropriately account for a moderate impairment in CPP. *See Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 805-07 (E.D. Mich. 2005) (emphasizing the need for a case-by-case analysis and concluding that limiting a claimant to unskilled work adequately accounted for a moderate deficiency in CPP); *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010)(noting that "[d]ecisions in this district reflect the conclusion that a moderate impairment in concentration, persistence, and pace does not necessarily preclude simple, routine, unskilled work."). Accordingly, the ALJ's hypothetical to the VE accounted for his moderate limitations in concentration, persistence, and pace, and was adequately supported by substantial evidence. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (noting that substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but

27

only if the question accurately portrays [the claimant's] individual physical and mental impairments." (internal citations omitted)).

In his second argument, Plaintiff contends that because the ALJ found depression to be a severe impairment at Step 2, Plaintiff's severe depression is work preclusive according to VE testimony. As pointed out by Defendant, this argument conflates two standards. (DE 23 at 22 n. 10.) While the ALJ did determine at Step 2 that Plaintiff's depression was a severe impairment, this is merely a *de minimis* finding. A finding of 'not severe' at Step 2 is appropriate only where the impairment "is a slight abnormality that minimally affects work ability . . . ." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). It says nothing about the level of severity of Plaintiff's *symptoms of depression*, which seem to involve difficulties in interacting with supervisors and co-workers. According to the VE's testimony, the jobs provided were "low stress" and involved only brief and superficial interactions with coworkers, supervisors, and the public. (R. at 388-89.) Plaintiff does not indicate what further limitations should have been included to account for his depression. The ALJ's questions to the VE accurately reflected Plaintiff's conditions and provide substantial evidence for his finding at Step 5.

### 4.   June 26, 2014 MRI

Plaintiff next argues that the ALJ erred by failing to address a June 26, 2014 MRI that showed evidence of multiple sclerosis ("MS"). The Commissioner

argues that the MRI post-dated Plaintiff's date last insured by two years and did not serve to illuminate his health before that date. *See Higgs*, 880 F.2d at 863 ("evidence of medical condition(s) after insurance cutoff must be considered to the extent it illuminates claimant's health before that date."). The Undersigned agrees with the Commissioner.

First, as Plaintiff conceded at the June 25, 2015 hearing before me on his motion for remand pursuant to Sentence Six of § 405(g), "evidence from 2014 and 2015 would not show the severity of Plaintiff's MS, or even that Plaintiff *had* MS in 2012." *Hogston v. Comm'r*, No. 14-14458, 2015 WL 4459352, at *3 (E.D. Mich. July 21, 2015). Further, Plaintiff <u>did not allege MS as one of his impairments</u>. In addition, as the Commissioner points out, the June 26, 2014 MRI showed a stable pattern of white matter disease and "no convincing evidence of new demyelinating plaque" or "active demyelination." (R. at 664.) A potential diagnosis of MS does not shed light on Plaintiff's condition on or before his date last insured. *See Higgs*, 880 F.2d at 863 (a mere diagnosis "says nothing about the severity of the condition."). Accordingly, the ALJ did not err by failing to consider the June 26, 2014 MRI.

### 5.    Evaluation of Credibility

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's

demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008). "It is of

course for the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486

F.3d 469, 475 (6th Cir. 2007). Nevertheless, "an ALJ's assessment of a claimant's

credibility must be supported by substantial evidence." *Walters v. Comm'r Soc.*

*Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain

degree is appropriate where an ALJ finds contradictions among the medical

reports, claimant's testimony, and other evidence." *Walters,* 127 F.3d at 531; *see*

*also Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011)

("Consistency between a claimant's symptom complaints and the other evidence in

the record tends to support the credibility of the claimant, while inconsistency,

although not necessarily defeating, should have the opposite effect."). When

assessing an individual's credibility, "the ALJ must [first] determine whether a

claimant has a medically determinable physical or mental impairment that can

reasonably be expected to produce the symptoms alleged." *Calvin v. Comm'r of*

*Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011). The ALJ made this finding here,

concluding that Plaintiff's medically determinable impairments could reasonably

be expected to cause the alleged symptoms. (R. at 56.)

Upon making such a finding, the ALJ must next "consider the entire case

record" to "evaluate the intensity, persistence, and functional limitations of the

symptoms considering objective medical evidence."   20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p.  A non-exhaustive list of relevant factors to be considered by the ALJ include: 1) the claimant's daily activities; 2) location, duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of medication; 5) treatment, other than medication; 6) any measures the claimant uses or has used to relieve his or her pain or other symptoms; and 7) other factors concerning functional limitations and restrictions.  *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 474 (6th Cir. 2014); 20 C.F.R. § 404.1529(c)(1-3); Soc. Sec. Rul. 96-7p; *see also Ewing v. Astrue*, No. 10-cv-1792, 2011 WL 3843692, at *9 (N.D. Ohio, Aug 12, 2011) ("Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed* . . . .") (emphasis in original) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006)).  In his or her opinion, the ALJ must "provide a sufficiently specific explanation for his [or her] credibility determination so that it is clear to the individual and any subsequent reviewers the weight given to the individual's statements and the reasons for that weight."  *Malcolm v. Comm'r of Soc. Sec.*, No. 13-15188, 2015 WL 1439711, at *7 (E.D. Mich. Mar. 27, 2015) (citing *Soc. Sec. Rul.* 96-7, 1996 WL 374186, at *1 (July 2, 1997)).

Here, Plaintiff points out several of the ALJ's purported errors with respect to his weighing of credibility.  First, he takes issue with the ALJ's observation of

the discrepancy between Plaintiff's testimony that his pain was a 10/10 on a daily

basis and his report to Dr. Pinson that his pain was only 4-6/10.  Plaintiff asserts

that he did not understand the question and believed a "10" simply meant severe.

The Commissioner counters that 1) the ALJ asked the question in a clear and

straightforward manner and 2) Plaintiff has used the same scale on many occasions

to report his pain level.  There is no indication that Plaintiff misunderstood the

question, and the ALJ did not err in comparing Plaintiff's testimony with

conflicting evidence in the record.

Second, Plaintiff takes issue with the ALJ's treatment of his inconsistent

hospitalization history.  The ALJ specifically noted that Plaintiff reported to his

therapist that he had two recent inpatient mental health hospitalizations, but on

another occasion clarified that one of the hospitalizations occurred when he was

18.  (R. at 348.)  Plaintiff asserts that the therapists "assessed [the hospitalizations]

differently."  (DE 16 at 25.)  Plaintiff does not present case law or any reason why

the ALJ should not have taken these shifting stories into account when assessing

Plaintiff's credibility.

Third, Plaintiff asserts that he was "quite clear" that he continued to work

two days per week in 2009.  For example, on December 3, 2009, Plaintiff reported

that he was "currently working part-time."  (R. at 240.)  However, evidence in the

record *does* conflict with this, since he testified at the hearing that he stopped

working in August or September of 2009.  Again, Plaintiff does not demonstrate

why it was an error for the ALJ to compare Plaintiff's testimony with evidence in

the record and make note of the discrepancy.

Fourth, Plaintiff asserts that the ALJ cherry-picked his activities of daily

living in order to discount his credibility.  He does not deny, however, that his self-

reported activities of daily living during the relevant time period include cooking,

cleaning, shopping, visiting family, mowing the lawn, and driving a car.  (R. at

135-38.)  Plaintiff argues that the ALJ failed to discuss his failure to shave and

bathe, his trouble lifting, bending, standing, walking, and completing tasks, and his

difficulties with stress and changes in routine.  However, "[a]n ALJ need not

discuss every piece of evidence in the record for his [or her] decision to stand."

*Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 6661, 665 (6th Cir. 2004).  Here, the

ALJ provided multiple reasons for considering Plaintiff only partially credible, and

Plaintiff has not adduced an argument that the ALJ erred in his credibility analysis.

### 6.    Failure to Issue a Subpoena

"The Secretary may, on his own initiative or at the request of a party, issue

subpoenas for witnesses to appear at administrative hearings 'when it is reasonably

necessary for the full presentation of a case.'"  *Berger v. Sec'y of Health & Hum.*

*Serv's*, 835 F.2d 635, 640 (6th Cir. 1987) (quoting 20 C.F.R. § 404.950(d)(1)). The

Secretary also has the discretion to deny the request.  *Id.* According to the

HALLEX, "if an ALJ denies a claimant's request for subpoena, the ALJ must provide the claimant with written notification of the denial of the request and enter both the request and denial notification into this record as exhibits." HALLEX 1-2-5-78. Here, Plaintiff requested that the ALJ issue two subpoenas on June 10, 2014 and June 11, 2014. The first asked the VE to provide foundational documents that formed the basis of her opinion. The second asked for Dr. Gummadi's live testimony based on her failure to answer interrogatories. (R. at 523.) The ALJ did not issue the first subpoena and did not provide the notification described in the HALLEX. The second subpoena was issued but the witness was not produced.

Defendant concedes that the ALJ made a procedural error by failing to issue written notification to Plaintiff. However, she argues that any such error was harmless because the VE did not prepare any documents for the hearing and Plaintiff's counsel was able to cross examine her on her source materials and methodologies. Second, she argues that Dr. Gummadi's failure to appear did not impact Plaintiff's case because the ALJ assigned Dr. Gummadi's opinion no weight. I therefore agree that Plaintiff has not demonstrated that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Riddle v. Sec'y of Health & Hum. Servs.*, 904 F.2d 708,

708 (6th Cir. 1990) (finding no denial of due process where a subpoena was not issued but the claimant's attorney was able to cross-examine one of the subpoenaed physicians at the hearing).  Nor does he demonstrate a reasonable probability that the Commissioner would have decided the case differently if the evidence had been considered.  *Perkins v. Apfel*, 14 F. App'x 593, 599 (6th Cir. 2001) (requiring the claimant to "demonstrate a reasonable probability that the Commissioner would have decided the case differently if the evidence had been considered.").  Accordingly, Plaintiff has failed to demonstrate any more than a harmless error with respect to his requested subpoenas.

### 7.   Application of the Grids

When, as here, an ALJ concludes that a claimant does not have the RFC to perform his or her past relevant work at Step 4, the burden shifts to the Commissioner at Step 5 to show that Plaintiff "possesses the capacity to perform other substantial gainful activity that exists in the national economy."  *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This requires the Commissioner to "make a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (internal citations omitted).

Such substantial evidence "may be produced through reliance on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but

35

only if the question accurately portrays [the claimant's] individual physical and mental impairments." *Id.* The Commissioner can also accomplish this by employing the Medical Vocational Guidelines ("the grids"), found at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

Here, Plaintiff argues that the ALJ improperly relied on the grids when finding that Plaintiff was capable of performing other work in the national economy. However, the ALJ based his Step 5 findings "on the testimony of the vocational expert," and not the grids. As noted above, the hypothetical questions accurately portrayed Plaintiff's impairments and were supported by substantial evidence. Therefore, the ALJ appropriately relied on the VE's response to his hypothetical questions and Plaintiff's argument related to the grids is misplaced.

### 8.   Plaintiff's RFC

Plaintiff's RFC is "the most [he or she] can still do despite the physical and mental limitations resulting from [his or] her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(3), 416.927(e). "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of*

*Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

Pursuant to Social Security Rule 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).   In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8-, 1996 WL 374184, at *6-7.

Here, Plaintiff argues that the ALJ failed to assess limitations for his enuresis (despite finding it to be a non-severe impairment) and failed to do a "function by function" analysis.  As to Plaintiff's first argument, substantial evidence supports the ALJ's treatment of Plaintiff's enuresis.  Dr. Pinson's notes indicate that Plaintiff's condition is controlled with medication and that Plaintiff wears Depends as a precautionary measure.  (R. at 604 and 614.)  Plaintiff does not indicate what additional limitations should have been included in his RFC as a result of his enuresis and therefore has not demonstrated any error by the ALJ.

37

The Commissioner asserts that Plaintiff has waived his function by function argument by failing to discuss evidence that supports the argument.  To be sure, Plaintiff merely notes that the ALJ "failed to do a 'function by function' analysis, even more critical in light of the addition of severe depression."  (DE 16 at 27.) Even a review of his previous brief, all 42 pages of which he attempts to "re-raise" in the present action, does not reveal evidence to support his argument.  Plaintiff was given an opportunity to address this in his reply brief and he likewise failed to do so.  Accordingly, I find that Plaintiff has waived his argument related to the function by function analysis.  *See Burger v. Comm'r of Soc. Sec.*, No. 12-cv-11763, 2013 WL 2285375, at *4 (E.D. Mich. May 23, 2013) (finding that Plaintiff waived a credibility argument where he failed to brief the claim with specificity) (*United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *McPhereson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones.").

## H.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.

Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment, **GRANT** Defendant's motion for summary judgment, and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR

72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: November 23, 2015                    s/Anthony P. Patti
                                            Anthony P. Patti
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on November 23, 2015, electronically and/or by U.S. Mail.

                                            s/Michael Williams
                                            Case Manager for the
                                            Honorable Anthony P. Patti

40